UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIMBERLY A.,[1]

        Plaintiff,

   v.                                                                    1:21-CV-00109-LJV
                                                                            DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____


On January 21, 2021, the plaintiff, Kimberly A. ("Kimberly"), brought this action

under the Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  Docket

Item 1.  On December 10, 2021, Kimberly moved for judgment on the pleadings, Docket

Item 7; on May 3, 2022, the Commissioner responded and cross-moved for judgment

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Kimberly applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements.  *See* 42 U.S.C. § 423(c); *see also Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).  SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need.  42 U.S.C. § 1382(a).  A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs.  *See* 20 C.F.R §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

on the pleadings, Docket Item 8; and on June 14, 2022, Kimberly replied, Docket Item 9.

For the reasons that follow, this Court grants Kimberly's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

**DISCUSSION**

Kimberly argues that the ALJ erred in three ways.  *See* Docket Item 7-1.  First, she argues that the ALJ violated the treating physician rule in evaluating an opinion of Raja Rao, M.D.  *Id.* at 14.  Second, she argues that the ALJ also erred in evaluating the opinion of a consultative examiner, Craig Zuckerman, D.Ed.  *Id.* at 17.  Finally, she argues that the ALJ failed to evaluate assessments from 2018 and 2019 made by her treating social worker, Thomas Stephens, LCSW-R.  *Id.* at 20.  This Court agrees that the ALJ erred and, because that error prejudiced Kimberly, remands the case to the Commissioner.

For claims filed before March 27, 2017, such as Kimberly's, the ALJ must evaluate every medical opinion received when determining a claimant's residual functional capacity ("RFC").[4]  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  But an ALJ generally should give greater weight to the medical opinions of treating sources—those who have an "ongoing treatment relationship" with the claimant—because those medical professionals are in the best position to provide a "detailed, longitudinal picture of [the claimant's] medical impairment[s]."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA

---

[4] A claimant's RFC "is the most [she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant.").  In fact, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)) (brackets in original).

The Second Circuit has held that "there are 'specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion.'"  *Schillo v. Kijakazi*, 31 F.4th 64, 74-75 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  First, the ALJ must decide whether the treating source's opinion is entitled to controlling weight.  *Id.* at 75.  "Second, if the ALJ decides the opinion is not entitled to controlling weight, [the ALJ] must determine how much weight, if any, to give it."  *Id.* (internal quotation marks omitted).  At each step of the treating physician rule analysis, "the regulations require the ALJ to give 'good reasons'—i.e., reasons supported by substantial evidence in the record—for the weight he affords the treating source's medical opinion."  *Schillo*, 31 F.4th at 75.

If an ALJ decides that a treating physician's opinion is not entitled to controlling weight, then at step two "[he] must *explicitly* apply the factors listed in [sections 404.1527 and 416.927]; the failure to do so is procedural error."  *Id.* (emphasis in original).  These factors, sometimes referred to as "*Burgess* factors," include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical

evidence; and (4) whether the physician is a specialist." *Id.* (quoting *Estrella*, 925 F.3d at 95-96) (alterations and internal quotation marks omitted); *see Burgess*, 537 F.3d at 129.

Here, Kimberly's treating psychiatrist, Dr. Rao, gave two opinions: a mental RFC questionnaire dated June 24, 2013, Docket Item 4 at 647-52, and a letter addressed "TO WHOM IT MAY CONCERN" dated April 3, 2014, *id.* at 655.  The ALJ afforded Dr. Rao's April 2014 opinion little weight, but he did not assign a weight to the June 2013 opinion.[5]  *See id.* at 743-44.  Kimberly argues that not assigning any weight to the 2013 opinion was an error requiring remand.  Docket Item 7-1 at 14.  This Court agrees.

First, Dr. Rao's 2013 mental RFC questionnaire was a "medical opinion" by a treating physician and therefore entitled to controlling weight if it was well supported by medical findings and consistent with other substantial evidence in the record.  *Burgess*, 537 F.3d at 128.  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can do despite impairment(s), and [the claimant's] physical or mental restrictions."  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).  Because Dr. Rao's mental RFC questionnaire made those precise judgments, it qualifies as an opinion.  In fact, by

---

[5] The ALJ's evaluation of these two opinions was the basis of a prior remand order by another judge of this Court in 2019.  *See* Docket Item 4 at 810-20; *Austin v. Comm'r of Soc. Sec.*, 2019 WL 13219374, at *4 (W.D.N.Y. Nov. 27, 2019) (Wolford, J.) (finding error when ALJ "concluded, based on his erroneous belief regarding the timing of Dr. Rao's opinions, that it was inconsistent for Dr. Rao to have stated that [Kimberly] was wholly unable to work in April 2013 but then, only two months later in June 2013, to have rated her, among other things, able to 'complete a normal workday without interruptions from psychologically based symptoms.'").

referring to Dr. Rao's June 2013 questionnaire in a paragraph addressing "Dr. Rao's opinions," *see* Docket Item 4 at 743, the ALJ seems to acknowledge exactly that.

Instead of assigning a weight to Dr. Rao's June 2013 opinion, however, the ALJ focused his attention on Dr. Rao's April 2014 letter, disagreeing with the Court's reading of the letter in its prior remand order. *See, e.g.*, *id.* ("The [d]istrict [c]ourt's depiction of the exact language of Dr. Rao's letter [of April 2014] and assertions therein appears to be overstated . . . ."); *id.* (suggesting that the Court "change[d] words in Dr. Rao's letter to imply "much greater limitations than those actually given by this treating source.").[6] Of course, the ALJ is entitled to disagree with the Court's prior assessment. But he is not entitled to use that disagreement as a substitute for assigning weight to an opinion.

In any event, by not assigning any weight to Dr. Rao's June 2013 opinion, the ALJ erred at both steps of the analysis: he neither decided whether the opinion was entitled to controlling weight nor did he assign any weight to it.[7] *See Laware v. Colvin*,

---

[6] To the extent the ALJ suggests that another judge of this Court altered the language in Dr. Rao's opinion to "impl[y] much greater limitations than those actually given," that is simply incorrect. *See* Docket Item 4 at 743. In fact, the language the ALJ quotes supposedly to demonstrate the Court's misreading of Dr. Rao's opinion proves precisely the opposite: that the Court did not misread Dr. Rao's opinion. *Compare id.* (ALJ's quoting Dr. Rao: "[Kimberly] can decompensation [sic] from time to time, especially when working") *with id.* (ALJ's quoting the district court: "working made [Kimberly] particularly vulnerable to episodes of decompensation"); *compare id.* (quoting Dr. Rao: "[Kimberly] does not handle stress very well") *with id.* (quoting the district court: "[Kimberly] was unable to 'handle stress very well'"); *compare id.* (quoting Dr. Rao: "[w]hen [Kimberly's] manic episodes occur she is not able to concentrate or focus") *with id.* (quoting the district court: "while [Kimberly] is experiencing a manic episode, [she] is unable to concentrate or focus"); *compare id.* (quoting Dr. Rao: "[Kimberly's manic episodes] ha[ve] led to her being unable to peruse [sp] full time employment") (third alteration in original) *with id.* (quoting the district court: "as a result of these medical issues, [Kimberly] is unable to pursue full-time employment").

[7] The Commissioner argues that the ALJ "gave good reasons why [Dr. Rao's June 2013 opinion] was entitled to little weight." *See* Docket Item 8-1 at 8; *see also id.* at 11 ("In sum, the ALJ properly discussed his reasons for giving little weight to Dr.

290 F. Supp. 3d 182, 186 (W.D.N.Y. 2017) ("Here, the ALJ failed to explain the weight (if any) afforded to the opinions of examining physician . . . . As such, the Court is unable to determine whether the ALJ duly considered all of the medical opinions of record, and/or properly applied the treating physician rule."); *Featherly v. Astrue*, 793 F. Supp. 2d 627, 632 (W.D.N.Y. 2011) ("With respect to the opinions of several other treating physicians contained in the record, the ALJ's opinion makes no mention of the weight assigned to them, or otherwise explain whether they are adopted or rejected."). And the ALJ certainly did not explicitly address the *Burgess* factors in addressing Dr. Rao's opinion; in fact, the ALJ's discussion of Dr. Rao's June 2013 opinion was limited to only one sentence. *See* Docket Item 4 at 743 ("In June 2013, Dr. Rao completed a mental residual functional capacity questionnaire wherein [the] limitations included [Kimberly's] [be]ing seriously limited, but not precluded[,] in [her] mental abilities and aptitudes needed to do semiskilled and skilled work."). So the ALJ not only failed to provide a "good reason" for not giving Dr. Rao's June 2013 opinion controlling weight,

---

Rao's June 2013 medical source statement."). But this Court does not see any reference to giving that opinion "little weight"—or, indeed, *any weight*—on the pages cited or anywhere else in the ALJ's decision. The ALJ assigned "little weight" to Dr. Rao's April 2014 opinion, *see* Docket Item 4 at 744, but seems to have forgotten to assign a weight to the June 2013 opinion, *see id.* at 743. To the extent the Commissioner suggests that the ALJ needed to assign a weight to only one of Dr. Rao's two opinions, that is incorrect under the regulations governing Kimberly's case. *See* Docket Item 4 at 733 ("I have complied with the orders of remand when issuing this decision . . . which has made this case a concurrent decision with applicability of the rules prior to March 27, 2017."); *compare* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, *we will evaluate every medical opinion* we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.") (rules governing Kimberly's case) (emphasis added) *with id.* §§ 404.1520c(b)(1), 416.920c(b)(1) ("We are not required to articulate how we considered each medical opinion . . . from one medical source individually.") (new rules not applicable here).

but he provided no reason at all.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)) ("Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand.").

What is more, "a searching review of the record" suggests that Dr. Rao's June 2013 opinion was both well supported by his own notes and consistent with other evidence.  *See Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)) ("If, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm.").  In his June 2013 opinion, Dr. Rao concluded that Kimberly was "[s]eriously limited, but not precluded," with respect to several mental abilities and aptitudes needed to do unskilled work: (1) maintaining attention for two-hour segments; (2) completing a normal workday and workweek without interruptions from psychologically based symptoms; (3) performing at a consistent pace without an unreasonable number and length of rest periods; and (4) dealing with normal work stress.  Docket Item 4 at 649.  Those limitations find support in Dr. Rao's treatment notes between October 2012 and July 2013.  *See id.* at 471-72, 616, 619-20, 622, 642 (noting Kimberly's sleep issues, difficulty with focusing and concentrating, exhaustion due to her medication, and feeling that she would be unable to handle full-time work).

And Dr. Rao's limitations were consistent with other evidence in Kimberly's record as well.  *See id.* at 65, 585, 662, 667, 672, 674, 677-78, 682, 684-87.  For example, Kimberly testified at the hearing before the ALJ that: (1) her medicine left her "very, very tired"; (2) she got confused and did not have any focus; and (3) when she

was stressed from having "too much on [her] plate," she would "keep looking up," "lose total concentration," and get nervous. *See id.* at 65. State consultative examiner Craig Zuckerman, D.Ed., opined that Kimberly was, at the time of his evaluation, moderately-to-severely impaired in her ability to "manage the day-to-day stress and routine of work." *See id.* at 585. And LCSW-R Stephens noted on multiple occasions that Kimberly could not sleep well due to her prescribed medications and that she became stressed and anxious when faced with working more than part-time hours. *See id.* at 662, 667, 672, 674, 677-78, 682, 684-87.

Finally, because the ALJ's RFC determination was inconsistent with Dr. Rao's findings, the Court cannot conclude that the ALJ's error was harmless. The ALJ concluded that Kimberly had the RFC to perform "light work,"[8] limiting her to occasional interaction with the public, frequent interaction with others, and "simple, unskilled work of a routine and repetitive nature." Docket Item 4 at 738. But those limitations do not address Kimberly's difficulties with focusing, dealing with work-related stress,[9] or

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[9] An RFC determination can account for a claimant's stress even without an explicit stress limitation, *see Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2021), so the ALJ's failure to use the word "stress" in the RFC was not error. But "stress is 'highly individualized,' [and] mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low[-]stress" jobs.'" *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006) (quoting SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985)). "[T]he Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Id.* Here, because the ALJ did not address the nature and circumstances of Kimberly's stress, this Court cannot evaluate whether the RFC adequately accounts for Kimberly's severe mental impairment as it relates to stress. *See Joleene S. v. Comm'r of Soc. Sec.*, 2022 WL 16631162, at *4 (W.D.N.Y.

performing at a consistent pace without unreasonable breaks.  *See id.* at 649; *see also Hendricks v. Comm'r of Soc. Sec.*, 452 F. Supp. 2d 194, 201 (W.D.N.Y. 2006) (remanding where ALJ's RFC determination was inconsistent with the opinion of treating physician).

In sum, the ALJ failed to adequately apply the treating physician rule to Dr. Rao's June 2013 opinion, which was both supported by Dr. Rao's own notes and consistent with other record evidence.  *See Burgess*, 537 F.3d at 128; 20 C.F.R. §§ 404.1527, 416.927.  Moreover, Dr. Rao's June 2013 opinion included limitations that were not incorporated in the ALJ's RFC determination.  *See, e.g., Hendricks*, 452 F. Supp. 2d at 201 ("Based on this record, there is not substantial evidence to support the wholesale rejection of the opinions of plaintiff's long-standing, primary treating physician.  That is particularly true here, in light of the absence of significantly contradictory substantial evidence elsewhere in the record.").  Therefore, remand is necessary so that the ALJ can, among other things, assign a weight to Dr. Rao's June 2013 opinion, provide "good reasons" for the weight assigned, and craft an RFC consistent with that finding.[10]

---

Nov. 2, 2022) (citing *Haymond v. Colvin*, 2014 WL 2048172 (W.D.N.Y. May 19, 2014)) ("An ALJ is required to specifically analyze a plaintiff's limitations in dealing with stress and how those difficulties may affect her ability to work."); *see also Laura C. v. Comm'r of Soc. Sec.*, 529 F. Supp. 3d 64, 71 (W.D.N.Y. 2021) (finding that meaningful judicial review was precluded when the Court was "left to speculate" about the ALJ's reasoning).  And that is another independent reason why remand is required.

[10] The Court "will not reach the remaining issues raised by [Kimberly] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues.") (citations omitted).

## **CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 8, is DENIED, and Kimberly's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.


SO ORDERED.

Dated:          March 3, 2023
                Buffalo, New York


                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE